IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LONNIE DEAN KILLMAN and | ) | Case No. 08-61703 |
| REITHA MAY KILLMAN, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DAN R. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 09-6075 |
| | ) | |
| LONNIE DEAN KILLMAN, | ) | |
| REITHA MAY KILLMAN, | ) | |
| ELAINE KISSEE, | ) | |
| JUDY LAMBETH, and | ) | |
| BUD LAMBETH, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DIRECTING JUDGMENT IN FAVOR OF PLAINTIFF

The Chapter 7 Trustee in the Debtors' bankruptcy case filed this adversary

proceeding seeking turnover of, and authority to sell, residential real property which

is partially owned by Debtor Reitha May Killman, but which is occupied by her

mother, Elaine Kissee, as her residence.  The Defendants include Reitha Killman,

Elaine Kissee, and Reitha's sister, Judy Lambeth, who also has an ownership interest

in the property.[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons that follow, Judgment will be entered in favor of the Trustee.

Elaine Kissee is ninety years old. She has two daughters, Debtor Reitha Killman, formerly known as Reitha Fowler, and Judy Lambeth. She acquired the property at issue here in 1972, after her husband had passed away, using proceeds from the sale of farm land to pay the full purchase price. She moved into the property at that time and has occupied it as her residence since then. She has never placed a mortgage on the property. Elaine was the sole record owner of the property from 1972 until 1984.

On January 17, 1984, Elaine executed a General Warranty Deed (the 1984 Deed) which transferred the residence from herself alone to herself, Reitha, and Judy as joint tenants, and not as tenants in common, with right of survivorship. She recorded the 1984 Deed on January 19, 1984.

---

[1] Debtor Lonnie Dean Killman and Bud Lambeth, the husband of Judy Lambeth, are also named as defendants in this action by virtue of their potential spousal interests in the property. They are not named on any of the relevant deeds or documents, and the parties stipulated at trial that neither of them claim any interest in the property.

More than twenty years later, on September 15, 2005, Elaine executed another General Warranty Deed (the 2005 Deed), this time purporting to transfer the residence from herself to Reitha and Judy, and reserving a life estate for herself.  The 2005 Deed was recorded on September 17, 2005.

Elaine continues to live in the residence by herself; her daughters have never lived with her in that residence.  She alone paid for the property, and she has paid all taxes, insurance, and maintenance on the property.  She testified that she recalled executing both the 1984 Deed and the 2005 Deed, and her intent at each time was that her daughters receive the property at her death.

Reitha and her husband, Lonnie Dean Killman, filed a voluntary Chapter 7 bankruptcy petition on September 8, 2008.  The Chapter 7 Trustee in their case filed this adversary proceeding seeking turnover of the property, and authority to sell it, with Reitha's share of the proceeds coming into the estate for the benefit of her creditors.  Reitha, Judy, and Elaine all oppose the relief requested, in sum asserting that, although Reitha's and Judy's names are on the deeds, the property actually belongs to Elaine.  Alternatively, if Reitha has an interest in the property by virtue of the deeds, such interest is so remote that a sale of her interest would be of inconsequential benefit to the estate.  Finally, they assert that the detriment to Elaine in selling the residence outweighs any benefit to the estate, and equity requires that

3

Elaine be permitted to remain in her long-time residence.

A debtor's bankruptcy estate is comprised of all legal or equitable interest of the debtor in property as of the commencement of the case.[2] Section 541 is very broad and includes property held jointly by a debtor and a nondebtor.[3] The nature of a debtor's interest in property, however, is determined by non-bankruptcy state law.[4]

We start with the premise that, under Missouri law, the holder of title to real property is presumed to be the owner of such property:

> Real property recordation is a subject with roots in history deeper [than] the birth of our nation and, despite attempts to develop a better method . . . . , it remains largely unchanged over the centuries. The purpose of recordation is to put the world on notice that someone claims an interest in the property. In recording the deed, anyone who later desires to purchase the property can determine the true owner and any other interest claimed in the property.[5]

We start, therefore, with an analysis of the deeds.

Section 442.025 of the Missouri Statutes permits an owner of real estate to convey such real estate to herself and other persons in the same manner as a

---

[2] 11 U.S.C. § 541(a)(1).

[3] *Sosne v. Gant (In re Gant)*, 178 B.R. 169, 172 (Bankr. E.D. Mo. 1995) (citing *In re Garner,* 952 F.2d 232 (8th Cir. 1991)).

[4] *Combs v. Rubin*, 101 B.R. 590, 592 (W.D. Mo. 1989); *In re Gant*, 178 B.R. at 172.

[5] *In re Gant*, 178 B.R. at 172 (footnote omitted). "Because a recorded interest is the best evidence of ownership of property, [a debtor's] recorded interest on the date of his bankruptcy filing must be respected." *Id.* at 171.

4

conveyance from a stranger who owned the real estate to the persons named as the grantees in the conveyance.[6]   Hence, by virtue of the 1984 Deed, Elaine validly transferred the property from herself to herself and her daughters.  Subsequent to the execution of the 1984 Deed, the three of them were, therefore, co-owners of the property.  The question, then, is the form in which the co-owners owned the property.

Section 442.450 of the Missouri Statutes provides that "[e]very interest in real estate granted or devised to two or more persons, other than executors and trustees and husband and wife, shall be a tenancy in common, unless expressly declared, in such grant or devise, to be in joint tenancy."[7]   Here, the 1984 Deed expressly transferred the property to the three women as joint tenants, and not as tenants in common, with right of survivorship.

Although the 1984 Deed was quite clear that the transfer was as joint tenants with right of survivorship, the Trustee points out that joint tenancy requires four unities:  (1) the co-tenants must have one in the same interest (unity of interest); (2) the interest must accrue by one and the same conveyance (unity of title); (3) the interest must commence at one and the same time (unity of time); and (4) the property

---

[6]  Mo. Rev. Stat. § 442.025.1.

[7]  Mo. Rev. Stat. § 442.450.

must be held by one and the same undivided possession (unity of possession).[8]  The

Trustee has suggested that, since neither of the daughters has ever lived in the

residence with their mother, the unity of possession might have been lacking and,

therefore, the 1984 Deed may have instead created a tenancy in common despite its

language.  However, I found no authority for the premise that unity of possession

requires that all of the tenants *live* on the property,[9] and since there was no evidence

that Elaine has ever *excluded* either of her daughters from the property,[10] I find that,

---

[8]  *Jenkins v. Meyer*, 380 S.W.2d 315, 320 (Mo. 1964).  "A joint tenancy is based upon the
theory that together the joint tenants have a single estate – they hold by the moiety (or half) and
by the whole. . . .  Alienation of a joint tenant's interest in the joint tenancy destroys the tenancy
and converts it into a tenancy on common." *Poetz v. Klamberg*, 781 S.W.2d 253, 255 (Mo. Ct.
App. 1989).  "A tenancy in common does not contain these four 'unities.'  Each tenant holds an
undivided interest in the whole by separate and distinct title, that interest consisting of his share
of the tenancy.  The interest is fully alienable without destroying the tenancy." *Id.* (citations
omitted).

[9]  Regarding the unity of possession, one well-known treatise has summarized:

> The possession of joint tenants is in common and each has a right to the
> enjoyment of the whole property to the extent of his or her interest, and a court of
> equity cannot restrain one joint tenant from entering on the land at the suit of a
> cotenant.  If only one joint tenant is in occupancy of the property, he or she must
> be considered as possessing, not only for himself or herself, but also for his or her
> cotenants, although there is no contract between them.  In addition, although it is
> competent for the joint tenants to make a subdivision of time for the exclusive
> occupancy of the whole of the joint property, in the absence of such agreement,
> one joint tenant cannot hold exclusive possession of the joint property from his or
> her cotenant, but can recover only the right to be let into joint possession of the
> property.

48A *C.J.S. Joint Tenancy* § 26 (citations omitted).

[10]  *See Jones v. Cox*, 629 S.W.2d 511, 514 (Mo. Ct. App. 1981) (noting that "[t]here is
respectable authority from other jurisdictions to the effect that joint tenancy is not destroyed by

when Elaine executed the 1984 Deed, the three of them then owned the property as joint tenants with right of survivorship.

In Missouri, co-tenants are presumed to take equal undivided interests in property unless the deed specifies otherwise.[11]  Hence, because the 1984 Deed did not specify any other proportion of ownership, the three women are presumed to have each owned a one-third interest in the property, with a right of survivorship, from 1984 until the execution of the 2005 Deed, discussed below.

Regarding the presumption of equal ownership, the Defendants contend that, since Elaine alone paid the full purchase price, and has paid all taxes, insurance, and maintenance on the property, the presumption of equal ownership has been rebutted. As the Trustee concedes, the presumption that each co-tenant takes an equal undivided

---

arrangements among the joint tenants which exclude one or more from management, possession, income and use rights for a specified period or for the life of another one or more of the joint tenants," and holding that the fact that possession by one of the tenants was delayed did not nullify the joint tenancy created by the deed); *Remax of Blue Springs v. Vajda & Co., Inc.*, 708 S.W.2d 804, 806 (Mo. Ct. App. 1986) ("The fact that possession by him might be delayed or that sole ownership is contingent upon Steven surviving the other joint tenants does not divest him of alienable title subject to execution.");  *In re King's Estate*, 572 S.W.2d 200 (Mo. Ct. App. 1978) ("While each of the joint tenants has a right to possession of the premises, no one tenant has the right of exclusive possession. Whether a joint tenant will ever attain sole ownership and exclusive possession is contingent on him being the survivor.").

[11]  *Johannsen v. McClain*, 235 S.W.3d 86, 87 (Mo. Ct. App. 2007); *Christen v. Christen*, 38 S.W.3d 488, 491-92 (Mo. Ct. App. 2001) (holding that brothers who owned property "as joint tenants with rights of survivorship and not as tenants in common" were presumed to each own a one-half interest in the disputed property); *In re Abernathy*, 259 B.R. 330 (B.A.P. 8th Cir. 2001) (presuming that a debtor's interest in a residence owned as joint tenants with her two sisters to be one-third).

interest in the property may be rebutted, in certain circumstances, by proof that the co-tenants contributed unequal amounts toward the purchase of the property.[12]  However, such a presumption can only be rebutted when there is "neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts toward the purchase price."[13]  In other words, "[an] unequal contribution *is irrelevant* in determining the joint tenants' respective shares when there is a family relationship between the tenants or when there is evidence of donative intent."[14]

Defendants asserted at trial that Elaine lacked donative intent because she did not intend for the property to pass to her daughters until her death.  However, because Elaine, Reitha, and Judy have a family relationship, I need not reach the question of donative intent as to this issue. Because of the family relationship, the unequal contribution is irrelevant and the presumption of equal ownership stands.

Nevertheless, the Defendants rely on the case of *Food Services Corp. v. Rheam*.[15]  In that case, a mother executed a deed conveying real property to herself

---

[12]  *Christen v. Christen*, 38 S.W.3d 488, 492 (Mo. Ct. App. 2001).

[13]  *Id.* (*quoting Montgomery v. Roberts*, 714 S.W.2d 234, 236 (Mo. Ct. App. 1986); additional citations omitted); *Johannsen v. McClain*, 235 S.W.3d at 87-88.

[14]  *Id.* (emphasis added).

[15]  145 S.W.3d 484 (Mo. Ct. App. 2004).

and her son as joint tenants with rights or survivorship, and the deed did not specify the respective ownership interests in the property. As is the case here, the son contributed nothing toward the acquisition or maintenance of the property, and the evidence was that he was added as a joint tenant for estate planning purposes. The son's creditor then registered a judgment against the son in the county where the property was located and sought partition and half of the proceeds. In ruling against the creditor, the Missouri Court of Appeals for the Southern District held that, notwithstanding *Christen v. Christen*'s declaration that unequal contributions are irrelevant when there is a family relationship, the trial court could look at unequal contributions by the mother and son.

*Rheam* does support the Defendants' position on this issue. As I indicated at the conclusion of the trial, however, I agree with the Trustee that *Rheam* was, simply put, wrongly decided. First, *Christen v. Christen*, and the cases on which it relied, could not be more clear that unequal contributions are irrelevant when there is a family relationship or donative intent. In addition, in reaching its decision in *Rheam*, the Court of Appeals relied on cases evaluating interests in bank accounts. As the Trustee points out, the rights of joint owners in bank accounts are expressly governed by statute and are, therefore, distinguishable from the real estate context.[16]   Further,

---

[16] *See, e.g.,* Mo. Rev. Stat. §§ 362.470 and 369.174.

9

in contrast to the Southern District, the Missouri Court of Appeals for the Western District has rejected the application of a bank account case (one of the cases on which the *Rheam* Court had relied) in the real estate context, even where some of the joint tenants claimed that another joint tenant's interest in the real estate had no value.[17]

Based on all that, I find that the 1984 Deed resulted in the three women owning the property as joint tenants with right of survivorship, and that each of the three women owned an undivided one-third interest at that point.

Then, in 2005, Elaine purported to transfer the property from herself to Reitha and Judy, and reserving a life estate for herself, through the 2005 Deed. At that time, however, Elaine only owned an undivided one-third interest, with a right of survivorship. Because the 2005 Deed purported to transfer more than what Elaine owned at the time, the parties raised the question of whether the 2005 Deed effectively transferred Elaine's one-third interest to her daughters, retaining a life estate in that one-third interest, or whether the 2005 Deed was a nullity.

Generally, "[a] deed will transfer whatever interest the grantor holds, even if it is a lesser interest than the deed describes, unless the deed contains language that is

---

[17] *Remax of Blue Springs v. Vajda & Co. Inc.*, 708 S.W.2d 804, 805 (Mo. Ct. App. 1986) (rejecting the application of *Nieman v. First Nat'l Bank of Joplin*, 420 S.W.2d 20 (Mo. Ct. App. 1967), in the real estate context).

inconsistent with a more limited transfer."[18]   Based on that premise, and finding no

Missouri authority to the contrary, I find that the 2005 Deed was not a nullity, and

effectively transferred Elaine's one-third interest to her daughters, subject to Elaine's

life estate in that one-third interest.

The conveyance of a joint tenant's interest severs the joint tenancy and destroys

the right of survivorship.[19]   Such conveyed interest is then held as tenants in common.

However, while such a conveyance destroys the tenancy as to the share conveyed,

"where one of three or more joint tenants conveys his interest to one of the others, the

conveyee becomes a tenant in common as to the interest conveyed, but remains a joint

tenant as to his original interest."[20]   Thus, by virtue of the two deeds, Elaine now

possesses only a life estate in one-third of the property.   Reitha and Judy now are each

presumed to own an undivided one-half interest, as joint tenants with right of

---

[18]   Dale A. Whitman, *Teaching Property – A Conceptual Approach*, 72 Mo. L. Rev. 1353, 1358 (Fall, 2007) (citations omitted).  *See also Gray v. Clement*, 246 S.W. 940, 943 (Mo. 1922) (holding that a deed invested the grantee with no greater interest in the land than that of his grantors, which was the life estate of one of the grantors *Goodwin v. Costello*, 212 S.W.2d 804, 808 (Mo. Ct. App. 1948) ("Whatever the deed may profess to dispose of, the grantee, as between himself and the other cotenants, can obtain no greater interest than his grantor had a right to enjoy.") (citation omitted).

[19]   *Johnson v. Woodard*, 356 S.W.2d 526, 528 (Mo. Ct. App. 1962).

[20]   64 A.L.R.2d 918 § 10.   *Compare Remax of Blue Springs v. Vajda & Co.*, 708 S.W.2d at 806 ("A conveyance by a cotenant destroys the unity of title and converts the joint tenancy into a tenancy in common *insofar as the interest of the particular joint tenant is concerned.*") (emphasis added), *with Robertson v. Hagan*, 782 S.W.2d 780, 781 (Mo. Ct. App. 1989) (holding, in a case with only two joint tenants, that a conveyance by one joint tenant results in the right of the last surviving joint tenant to own the entire fee being extinguished).

survivorship, in two-thirds of the property, plus an undivided one-half interest, as

tenants in common, in the remainder interest in one-third of the property (subject to

Elaine's life estate in that one-third).

It bears mentioning here that the Trustee suggested at trial that the joint tenancy

may have converted to a tenancy in common, *as to all of the parties' interests*, when

Elaine conveyed her one-third interest in the property through the 2005 Deed.  In that

case, Reitha and Judy now each own an undivided one-half interest in the whole as

tenants in common, subject to the life estate.  Although I have concluded otherwise

(*i.e,* that they own the two-thirds portion as joint tenants with right of survivorship,

and the one-third as tenants in common), as a practical matter, it makes no difference

for these purposes due to the fact that the Trustee is proposing to sell the property.

That is because, even if two-thirds of the property is currently owned by them as joint

tenants with right of survivorship, the Trustee's sale of the property will sever that

joint tenancy, and terminate the right of survivorship, and the division of the sale

proceeds between Reitha's bankruptcy estate and Judy will be fifty-fifty under either

circumstance.

Next, as to Elaine's life estate, even though the life estate only attached to the

one-third of the property which she transferred via the 2005 Deed, the Trustee

concedes that, because Elaine was a joint tenant entitled to possession and enjoyment

12

of the whole property when she conveyed that one-third interest to her daughters, the reservation of the life estate likely relates to possession and enjoyment of the whole property for her life.  Finding no authority to the contrary, I conclude that Elaine's life estate entitles her to possession and enjoyment of the whole property until her death or until she abandons the life estate.

The Defendants next urge that, legal ownership aside, it would be inequitable for the Trustee to sell the property for the benefit of Reitha's bankruptcy estate.  It is true that "[t]he bankruptcy court is a court of equity, which means that it may issue orders that it deems necessary to carry out the provisions of the [Bankruptcy] Code."[21] As the Court in *In re Gant* said:

> While this grant of power is as broad as that language in § 105(a) [of the Bankruptcy Code], the Court is nevertheless guided and directed by state law and the Missouri courts in interpreting any equitable remedies available to [Reitha and her mother], which may serve to alleviate some of the unfairness resulting from the presumptions in favor of a recorded deed.[22]

Missouri has no express statutory provision which would permit the parties to correct the deeds *nunc pro tunc*.[23]  However, Missouri law has imposed implied trusts where equity requires.  Although they have not expressly asked for the imposition of an

---

[21] *Sosne v. Gant (In re Gant)*, 178 B.R. 169, 172 (Bankr. E.D. Mo. 1995).

[22] *Id.*

[23] *Id.* at 172-73.

13

implied trust, that is, in effect, what the Defendants seek here.

An implied trust results or arises by operation of law from the facts of the transaction, not from an agreement, and it results or arises, if at all, "at the instant the deed is taken."[24] The implied trust must result or arise from the facts occurring at the time of or anterior to the execution of the conveyance by which the title passes and cannot be created by subsequent occurrences.[25] In order to establish an implied trust, "an extraordinary degree of proof is required; a preponderance is not sufficient, but the evidence must be so clear, cogent, positive, and convincing as to exclude every reasonable doubt from the [court]'s mind" that a trust should be implied.[26]

Missouri courts recognize two classes of implied trusts: constructive trusts and resulting trusts.[27] A resulting trust is based on the presumed intention of the parties and arises where, and only where, the intent may be reasonably presumed, as determined from the facts and circumstances existing at the time of the transaction out of which the trust is sought to be established.[28] Dishonesty and deceit are not

---

[24] *Parker v. Blakeley,* 93 S.W.2d 981, 988 (Mo. 1936).

[25] *Id.* (citations omitted).

[26] *Id.* at 987-89 (citation and internal quotation marks omitted). *Accord In re Gant*, 178 B.R. at 173 (citations omitted) (further holding that imposing this equitable remedy rests on an extraordinary degree of proof).

[27] *Id.* at 989.

[28] *Id.* (citation omitted).

necessary ingredients of a resulting trust.[29]

The party seeking the establishment of a resulting trust bears the burden to show its existence by clear and convincing evidence to exclude all doubt from the mind of the court.[30]  To establish a resulting trust, "an extraordinary degree of proof is required."[31]

When parents pay for property that is conveyed to their children, "an inference or presumption of gift is raised and the burden is on the parent[s] to prove by clear and convincing evidence that a gift was not intended."[32]  This is consistent with the pronouncement in *Christen v. Christen* that, where there is a family relationship, evidence of unequal contribution is irrelevant.  In other words, when parents transfer property to their children, donative intent is essentially presumed.

Here, the parties all testified that, despite the fact that Elaine titled the property in her daughters' names, she did not intend to give a present ownership interest in this property to them but, rather, intended that the property pass to them at her death.  Thus, they assert, the Court should treat the transactions as Elaine intended – as an

---

[29]  *Id.* (citation omitted).

[30]  *Matlock v. Matlock*, 815 S.W.2d 110, 113 (Mo. Ct. App. 1991) (citations omitted).

[31]  *Id.* (citation omitted).

[32]  *Prange v. Prange*, 755 S.W.2d 581, 593 (Mo. Ct. App. 1987) (citations omitted) (resulting trust found to exist in favor of family members who had paid for property, but titled it in the names of other family members; however, no interest of the trustee or creditors involved).

estate planning or probate-avoidance measure.

A similar situation was presented in the case of *Combs v. Rubin*.[33]  In that case, through a series of transactions, the debtor's mother titled her home to herself and her daughter as joint tenants with the right of survivorship.  The parties had stipulated that the transfer was made solely for estate planning purposes and the daughter had paid no consideration for the transfer.  When the daughter filed a Chapter 7 bankruptcy petition, her Chapter 7 trustee sought to sell the property and retain the debtor-daughter's one-half interest in the proceeds for the benefit of her creditors.  The mother sought the imposition of a resulting trust and a declaration that the property was not property of the debtor-daughter's bankruptcy estate.

On appeal from the bankruptcy court's finding that no resulting trust existed, the district court noted that the mother had asserted that the intention of the parties was the principal controlling factor in determining whether a joint tenancy had been created, and remanded the case to the bankruptcy court for a determination as to whether (1) the mother intended to transfer a valid present interest to the daughter so that the daughter would, in fact, be a joint tenant holding an undivided one-half interest in the property and would receive by survivorship the mother's interest in the property upon the mother's death without the necessity of probate, or (2) the mother

---

[33]  101 B.R. 590 (W.D. Mo. 1989).

did not intend to transfer any present interest to the daughter but believed (erroneously) that executing a deed purporting to make the daughter a joint tenant would permit the mother's 100 per cent interest to pass from the mother to the daughter upon the mother's death.[34]  The implication of the remand was that, if the evidence showed that the parties intended the former, then the trustee would win, and the debtor-daughter's one half interest would be included in her bankruptcy estate; if the evidence showed that the parties intended the latter, then the mother would win, and the property would not be included in the debtor-daughter's bankruptcy estate.

Applying that analysis to the case at bar, there is a distinction between whether (1) Elaine intended to transfer a present interest to her daughters so that the daughters would, in fact, be the owners immediately so that, upon the Elaine's death, the property would not be in her probate estate, or (2) Elaine did not intend to transfer any present interest to the daughters but believed (erroneously) that executing a deed purporting to make the daughters the owners would permit her 100% interest to pass from her to her daughters upon her death.

Although Elaine testified that she did not intend to give any "present ownership interest" in the property to her daughters, her testimony on that point was not credible. I find it implausible that she failed to understand, at the time she executed each of the

---

[34]  *Id*. at 592.

17

deeds, that titling the property in her daughters' names meant that the daughters would have a current ownership interest in the property. This is particularly true because, as pointed out at trial, Elaine transferred her ownership interest not once, but twice, and the documents were created by an attorney. In addition, in contrast to *Combs v. Rubin*, Elaine ultimately transferred *all* ownership interest to her daughters, reserving only a life estate, through the 2005 Deed. In other words, in *Combs v. Rubin*, it was plausible that the mother could have believed, *albeit* erroneously, that titling the property in herself and her daughter as joint tenants did not transfer any present ownership to the daughter. In contrast, Elaine ultimately transferred the property outright to her daughters, retaining only the life estate. I find that she understood that she was thereby giving up any interest in the property apart from her life estate. Hence, because the form of the title to the property is as Elaine intended at the time she executed the deeds, and there was, therefore, no mistake, the Defendants have not met their burden of showing that Elaine should benefit from a resulting trust.[35]

Constructive trusts are an equitable remedy that rest upon public policy.[36] They

---

[35] *Accord Matlock v. Matlock*, 815 S.W.2d at 113-14 (affirming trial court's refusal to impose a resulting trust, despite the fact that the mother paid the full purchase price, paid the taxes, and paid for all improvements, because the evidence showed that, at the time of the execution of the deed, the mother intended to include her son and daughter-in-law's names on it).

[36] *Parker v. Blakely*, 93 S.W.2d at 988.

18

have been described as "a fluid, flexible device which may be employed to remedy different types of injustice," including unjust enrichment or mistake.[37]  At one point, Missouri courts required evidence of fraud or misconduct in order to impose a constructive trust; however, Missouri courts now impose constructive trusts "in broader circumstances, including where the evidence establishes that due to a mistake, the defendant received property belonging to plaintiff under conditions that in equity the defendant ought not be allowed to retain it."[38]  The purpose of a constructive trust is to restore to the rightful owner property wrongfully withheld by the defendants, whether due to fraud, unjust enrichment, or mistake.[39]  "The equities of the situation must shape the measure of the relief, if any."[40]

The parties may well consider between themselves that the property belongs to Elaine.  However, there is no allegation that Reitha is wrongfully withholding the property from Elaine, nor is there any mistake to correct because, as discussed above, the manner of ownership is as Elaine intended at the times she titled it in her

---

[37] *Brown v. Brown,* 152 S.W.3d 911, 918 (Mo. Ct. App. 2005) ("[T]he touchstone for imposition of a constructive trust is injustice or unfairness, which may take the form or be the product of fraud (actual or constructive), abuse of a fiduciary or confidential relationship, undue influence, or unjust enrichment.").

[38] *Id.* at 919.

[39]  *In re McGehee*, 342 B.R. 587, 593 (Bankr. W.D. Mo. 2006) (citing *Parker v. Blakeley,* 93 S.W.2d at 988).

[40] *Brown v. Brown*, 152 S.W.3d at 918.

daughters' names as an estate planning measure and to avoid probate. Arguably, if Reitha herself were attempting to enforce her ownership interest in the property as against Elaine, Elaine might have an unjust enrichment argument in defense, but here it is the Trustee, on behalf of Reitha' creditors, who opposes the constructive trust.[41] As stated above, real property recordation in Missouri has "roots in history deeper [than] the birth of our nation," the purpose of which is to put the world on notice as to who owns or claims an interest in property. Had any of Reitha's creditors done a search of property ownership when they extended credit to her, they could very well have relied on the fact that the records showed she had an ownership interest in this unencumbered property. I find, therefore, that Reitha's creditors are not unjustly enriched by having the property included in her bankruptcy estate.

As stated above, the imposition of an implied trust is an equitable remedy, and I recognize that this may seem an unfair result to the Defendants. However, the problem here is that, while the titling of the property in Elaine's daughters' names has had unanticipated consequences since one of the daughters has now filed bankruptcy, the evidence shows that Elaine intended, at the times of the deeds, to title the property in the daughters' names in order to avoid probate. Although she may regret that

---

[41] *Compare, Prange*, 755 S.W.2d at 592-93 (in resulting trust context, suit was between family members only).

20

decision now, it was no mistake at the time.   There is a difference between not anticipating all of the ramifications of an action one takes, and not intending to take that action.   The evidence here is that Elaine intended to title the property in her daughters' names so she herself would not be the owner at her death.   Moreover, from an equitable standpoint, if Elaine intended for her daughters to own the property for one purpose (to avoid probate), she should not be permitted to later say, when there are unanticipated consequences, that the daughters do not own it at all.[42]   When parents give property to their children, they run the same risk.

Since there is no basis on which to impose either a resulting or constructive trust in favor of Elaine, Debtor Reitha Killman's interest in the property is property of the Killmans' bankruptcy estate.   As such, §§ 521(a)(4) and 542(a) of the Bankruptcy Code require the Defendants to turn over the property to the Trustee.   In addition, § 363(h) of the Code provides, in relevant part:

> (h)  Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –
>
> > (1) partition in kind of such property among the estate and such co-owners is impracticable;

---

[42] *Accord In re McGehee*, 342 B.R. 587, 592-93 (Bankr. W.D. Mo. 2006) (finding no injustice in declining to impose an implied trust where the parents titled an account in the daughter-debtor's name to avoid Medicaid from getting it).

21

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;  [and]

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners . . . .[43]

The property consists of a single lot with a single home on it and, therefore, cannot be partitioned.  In addition, selling Reitha's undivided interest would yield significantly less for the estate than sale of the property free of the co-owners' interests.  The first and second elements under § 363(h) are, therefore, met.

As to the third element, I find that Judy will suffer no detriment as a result of the sale of the property.  As to Elaine, methods for valuing life estates in property exist, and the Trustee could, conceivably, sell the property free of Elaine's life estate and distribute the proceeds to Judy, Elaine, and Reitha's bankruptcy estate based on a formula taking the value of the life estate into account.  However, the Trustee made clear at the hearing that he does not intend to sell the property in a manner which would divest Elaine of her life estate, which, the parties testified, would likely cause her to have to move into a nursing home.  I agree that the detriment to Elaine in requiring her to move out of her long-time home, and into a nursing home, outweighs

---

[43]  11 U.S.C. § 363(h).

22

any benefit to the estate in selling the property free of her life estate.  As a result, the

Trustee's proposal to sell the entire property, subject to the life estate, and to split the

proceeds, after costs of sale, equally between Judy and the bankruptcy estate, is

appropriate.

Because the property will be offered for sale subject to the life estate, it bears

mentioning again that, even though the life estate was only reserved as to the one-third

of the property conveyed through the 2005 Deed, as stated above, the life estate

entitles Elaine to possession and enjoyment of the entire property until her death or

until she abandons the life estate.

According to a statement from a local appraiser, who performed a "drive-by

appraisal," the current value of the residence is $55,000.[44]  Of course, the existence

of the life estate makes valuing the property more difficult for these purposes.  In

essence, the only reliable method to determine the value of Reitha's bankruptcy

estate's interest in the property, is for the Trustee to offer the property for sale, subject

to Elaine's life estate.  Pursuant to § 363(i), Judy would have a right of first refusal as

to any offers he receives.

ACCORDINGLY, the Clerk of the Court is DIRECTED to enter Judgment in

favor of the Plaintiff-Trustee.  The Trustee is authorized to list the property commonly

---

[44]  Plaintiff's Exhibit 3.

known as 607 Ohio Street, Marionville, Lawrence County, Missouri, for sale, subject

to a life estate in Defendant Elaine Kissee.  In the event that the Trustee receives an

offer to purchase said property, Defendant Judy Lambeth has a right of first refusal.

In the event that the property is sold to a third party, the Trustee shall distribute one

half of the proceeds after costs of sale to Defendant Judy Lambeth and retain the other

half as part of the Debtors' bankruptcy estate.  All other requests for relief are denied.

   IT IS SO ORDERED.

                                        /s/ Arthur B. Federman
                                        Bankruptcy Judge

Date: 2/26/2010

Copy to: Danny R. Nelson
         Chris L. Weber

24